UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

Louis Guadagni,

                    Plaintiff,              08-CV-3163
                                            (CPS)(SMG)

     - against -
                                            MEMORANDUM OPINION
New York City Transit Authority and         AND ORDER
Louis Delvalle,

                    Defendants.

------------------------------------------X

SIFTON, Senior Judge.

     On May 2, 2008, plaintiff Louis Guadagni commenced this

action against defendant the New York City Transit Authority

("Transit Authority")[1] and Police Officers "John Doe" and "Jane

Doe," alleging violations of 42 U.S.C. §§ 1983, 1985, 1986, and

1988, based on, *inter alia*, unspecified violations of the First,

Fourth, Fifth and Fourteenth Amendments to the United States

Constitution, as well as various violations of state law.  On

January 27, 2009, I dismissed plaintiff's complaint in its

entirety, without prejudice, for failure to state a claim

pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  On February 26, 2009, plaintiff filed an Amended

---

[1] In his original Complaint, plaintiff also named the Metropolitan
Transportation Authority ("MTA") and the MTA Police Department ("MTAPD") as
defendants, but sought and received permission to dismiss his claims against
those defendants voluntarily.  *Guadagni v. N.Y. City Transit Auth.*, No.
08-CV-3163, 2009 WL 205050, at *1 n.1 (E.D.N.Y. Jan. 27, 2009).  Plaintiff
also named the New York City Transit Authority Police Department ("TAPD") as a
defendant in his original Complaint, but in my January 27, 2009 memorandum
opinion and order, I took judicial notice of the fact that the TAPD does not
exist.  *Id.*

Complaint naming the Transit Authority and its employee Louis

Delvalle as defendants, alleging violations of 42 U.S.C. §§ 1983

and 1998,[2] including, in particular, false arrest and

imprisonment, malicious prosecution, violation of the right to

free speech, denial of due process, denial of equal protection of

the laws, and other unspecified violations of the First, Fourth,

Fifth and Fourteenth Amendments to the United States

Constitution.  Presently before this Court is defendants' motion

to dismiss the Amended Complaint for failure to state a claim

upon which relief may be granted pursuant Rule 12(b)(6) of the

Federal Rules of Civil Procedure.[3]  For the reasons that follow,

defendants' motion to dismiss is granted.

---

[2] Plaintiff also included an alleged violation of 28 U.S.C. § 1985 in his Amended Complaint, but clarified during briefing of this motion that the inclusion of the § 1985 claim was in error and should be stricken from his pleading.  Accordingly, the reference to 28 U.S.C. § 1985 in paragraph 112 of the Amended Complaint is hereby stricken.

[3] Defendants also purport to move to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, but do not discuss this rule or the standards governing personal jurisdiction in their memoranda of law.  To the extent defendants argue that the claims against defendant Delvalle should be dismissed for failure to effect proper service upon him, I note that by proof of service filed June 15, 2009, plaintiff represents that he served defendant Delvalle with a summons and the Amended Complaint on June 10, 2009.  Defendants have made no objection to the adequacy of this service.
    In the conclusion paragraph of their moving brief, defendants also "request that plaintiff's attorneys be sanctioned for continuing to advance claims which, even on their face, are frivolous, substantively unreasonable and vexatious" pursuant to 28 U.S.C. § 1927 and Rules 11(b) and 11(c) of the Federal Rules of Civil Procedure.  Because defendants have not formally moved for sanctions in accordance with the requirements of Rule 11(c)(2) or otherwise briefed the issue, I decline to impose sanctions on plaintiff's attorneys.

**BACKGROUND**

The following facts are drawn from the Amended Complaint, documents referred to therein and incorporated by reference, documents in plaintiff's possession and relied upon by plaintiff, and matters of which this Court may take judicial notice. *See Kramer v. Time Warner, Inc.* 937 F.2d 767, 773 (2d Cir. 1991) (district court may consider "documents attached to the complaint as exhibits or incorporated in the complaint by reference" on motion to dismiss); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (district court may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit" on motion to dismiss); Fed. R. Evid. 201 (setting forth conditions under which court may take judicial notice of certain matters). Plaintiff's allegations are accepted as true for the purposes of defendants' motion to dismiss, and all reasonable inferences are drawn in favor of plaintiff as the nonmoving party. *See Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002).

Defendant Transit Authority is a public authority and public benefit corporation duly organized and existing under the Public Authorities Laws of the State of New York. Am. Compl. ¶ 2.; Pub. Auth. Law § 1200 *et seq.*. Defendant Louis Delvalle is employed by the Transit Authority as a member of its Special Investigations Unit ("SIU"). Am. Compl. ¶ 13.

Beginning on February 26, 2001, plaintiff Louis Guadagni worked for defendant Transit Authority as a Train Operator. *Id.* ¶ 28. Prior to that date, plaintiff was an owner, uncompensated officer and compensated, work-performing employee of SMS Food Corp., a family-owned supermarket. *Id.* ¶ 27. On February 26, 2001, following the commencement of his employment by the Transit Authority, plaintiff ceased to act as a compensated, work-performing employee of SMS Food Corp. *Id.* ¶¶ 29-30.

In March of 2002, plaintiff sustained a job-related injury to the lower back. *Id.* ¶ 33. As a consequence, plaintiff filed for and received worker's compensation benefits for a 58-day period, following which he returned to work at the Transit Authority. *Id.*

On November 20, 2005, while performing his duties as a Train Operator, plaintiff sustained a job-related leg injury and aggravation of his prior low back injury. *Id.* ¶ 34. Thereafter, plaintiff filed for and received worker's compensation benefits. *Id.* The doctor retained by the Transit Authority who examined plaintiff in connection with his November 2005 application for worker's compensation diagnosed plaintiff with a partial disability. *Id.* ¶¶ 36-38. Although plaintiff attempted to secure medical approval to return to work on multiple occasions following his November 2005 injury, he was not medically cleared

until January 26, 2006, at which time he returned to work.  *Id*.
¶¶ 39-42.

Prior to or in November of 2005, defendants commenced an
investigation of plaintiff which involved clandestine
videosurveillance of plaintiff.  *Id.* ¶¶ 43-44.  The surveillance
tapes obtained by defendant Delvalle show plaintiff going to and
from the supermarket he owned, doing paperwork at the supermarket
he owned, carrying groceries for personal use, and carrying an
empty quarter-keg of beer.  *Id.* ¶¶ 46-49.  Plaintiff alleges that
in the period during which he received worker's compensation
benefits following his November 2005 injury, he did not perform
any work the doctors retained by the Transit Authority found him
unable to perform.  *Id.* ¶ 51.

On April 30, 2007, defendant Delvalle, allegedly
misinterpreting the content of the surveillance videos, provided
sworn testimony against plaintiff in a criminal complaint filed
against plaintiff in the King's County Criminal Court.  *Id.* ¶ 55;
Declaration of Gerard A. Lucciola dated November 26, 2008
("Lucciola Decl."), Ex. 1 (copy of criminal complaint).  In the
complaint, defendant Delvalle stated that he was informed by two
doctors who examined plaintiff in December and January of 2005
that plaintiff complained of back pain and numbness in his leg,
which caused the doctors to restrict plaintiff from, among other
things, lifting, pushing, or pulling heavy objects and operating

a car. Lucciola Decl., Ex. 1, at 2-4. According to defendant Delvalle, during the doctors' examinations, plaintiff filled out and signed Daily Activities Questionnaires certifying that he was not working in any capacity for any employer, that he had difficulty standing for long periods of time, and that he was not performing any physical activities outside of his home. *Id.* Defendant Delvalle further stated that the surveillance tapes he obtained showed plaintiff, in December and January of 2005, driving to and from a supermarket of which plaintiff is the registered "President/Chief Executive Officer," carrying multiple boxes of groceries, entering private areas in the grocery store, handling plastic bags, and talking with workers inside the store, all without displaying any signs of physical discomfort. *Id.*

The April 30, 2007 criminal complaint charged plaintiff with, *inter alia*, grand larceny, insurance fraud, and falsification of business records.[4] Am. Compl. ¶ 55; Lucciola Decl. Ex. 1 at 1. On May 4, 2007, on the basis of defendant Delvalle's testimony in the criminal complaint, plaintiff was arrested and transported to the 60th precinct of the New York City Police Department. *Id.* ¶ 56.

---

[4] Plaintiff alleges that on August 30, 2007, the criminal complaint against him was "dismissed on the record pursuant to New York Criminal Procedure Law 180.80." Am. Compl. ¶ 60. This provision, however, does not provide for the dismissal of criminal complaints. In any event, there is no dispute that on June 13, 2008, plaintiff was indicted for larceny, insurance fraud, and falsification of business records, and that those charges have not yet been resolved.

The present action was commenced on May 2, 2008, in New York Supreme Court, Kings County. *See* Declaration of Gena Usenheimer dated April 23, 2009 ("Usenheimer Decl."), Ex. 2 (copy of Complaint filed on May 2, 2008).

On June 13, 2008, plaintiff was indicted in the Supreme Court of the State of New York, County of Kings, on, *inter alia*, one count of larceny, three counts of insurance fraud, and three counts of falsifying business records. *See* Am. Compl. ¶ 67; Lucciola Decl. Ex. 2 (copy of indictment). Plaintiff has entered a plea of not guilty, and the criminal proceedings against plaintiff are pending. Am. Compl. ¶ 68.

On August 4, 2008, defendant Transit Authority removed the present action to this Court, and on September 8, 2008, moved, *inter alia*, to dismiss the original Complaint. I granted defendant Transit Authority's motion without prejudice on January 27, 2009, and plaintiff filed his Amended Complaint on February 26, 2009. Following my March 19, 2009 denial of plaintiff's motion for reconsideration of my January 27, 2009, order, defendants filed the present motion on April 23, 2009.

## DISCUSSION

I. Standard for Motion to Dismiss

Defendants seek dismissal of plaintiff's claims for relief for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion pursuant to Rule

12(b)(6), a court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal citations and quotations omitted), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). In a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). Dismissal is appropriate only when it "appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir. 2000). This rule "is to be applied with particular strictness when the plaintiff complains of a civil rights violation." *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991).

Nevertheless, to survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility." *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1970 (2007). Although the complaint need not provide "detailed factual allegations," *id*. at 1964; *see also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007)(applying the standard of plausibility outside *Twombly*'s anti-trust

context), it must "amplify a claim with some factual allegations
. . . to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d
143, 157-58 (2d Cir. 2007) (emphasis in original).  In other
words, the complaint must provide "the grounds upon which [the
plaintiff's] claim rests through factual allegations sufficient
'to raise a right to relief above the speculative level.'"  *ATSI
Commc'ns*, 493 F.3d at 98 (quoting *Twombly*, 127 S.Ct. at 1965).
In addition, a complaint should be dismissed under Rule 12(b)(6)
if a court finds that the plaintiff's claims are barred as a
matter of law.  *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86
(2d Cir. 2000).

II.  <u>Motion to Dismiss the Amended Complaint</u>

All of plaintiff's claims for relief in the Amended
Complaint -- including his claims alleging false arrest and
imprisonment, malicious prosecution, violation of the right to
free speech, denial of due process, and denial of equal
protection of the laws, as well as other unidentified claims
under the First, Fourth, Fifth and Fourteenth Amendments to the
United States Constitution -- must be brought via 42 U.S.C. §
1983, which "provides an instrument by which an individual
deprived of a federal right by a person acting under color of
state law may be compensated." *Eagleston v. Guido*, 41 F.3d 865,
875 (2d Cir. 1994).  "To state a claim under § 1983, a plaintiff
must allege that (1) the challenged conduct was attributable at

least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States" or federal law. *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citing *Dwares v. City of N.Y.*, 985 F.2d 94, 98 (2d Cir. 1993))

A government entity like the Transit Authority is amenable to suit under § 1983, but may not be held liable unless its policies or customs result in a plaintiff's injury. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-95 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 477-81 (1986). "A municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Further, "an individual may only be held liable under § 1983 if that individual is personally involved in the alleged constitutional deprivation." *Rumala v. N.Y. City Transit Authority*, No. 02-CV-3828, 2005 WL 2076596, at *11 (E.D.N.Y. Aug. 26, 2005) (citing *Alexander v. City of N.Y.*, No. 02 Civ. 3555, 2004 WL 1907432, at *16 (S.D.N.Y. Aug. 25, 2004)).[5]

---

[5] In their submissions, defendants argue that plaintiff has failed to state a § 1983 claim against defendant Delvalle because, according to defendants, defendant Delvalle is an "otherwise private person," who "acts 'under color of' state law" only if he "engaged in a conspiracy with state officials to deprive another of federal rights." *Tower v. Glover*, 467 U.S. 914, 920 (1984). According to defendants, plaintiff has shown no such conspiracy between defendant Delvalle and state officials, and as a matter of law, defendant Delvalle cannot conspire with his employer, the Transit Authority. *See, e.g.*, *Rini v. Zwirn*, 886 F. Supp. 270, 292 (E.D.N.Y. 1995) (collecting cases). The premise of defendants' argument is incorrect. State employees acting within the scope of their employment are not "otherwise private persons." The Transit Authority is a state entity, and courts have held that individual liability under § 1983 against employees of the Transit

A.    *Plaintiff's Fourth Amendment Claims*

Because the balance of plaintiff's claims stem from the facts underlying plaintiff's false arrest and imprisonment and malicious prosecution claims, which arise under the Fourth Amendment, I consider plaintiff's Fourth Amendment claims first.[6]

1.    *False Arrest and Imprisonment*

Federal claims for false arrest and imprisonment brought via § 1983 rest on an individual's Fourth Amendment right to be "free from unreasonable seizures, including arrest without probable cause," and are "substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Plaintiff's false arrest and false imprisonment claims may be evaluated together, as "[i]n New York, the tort of false arrest is synonymous with that of false imprisonment." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991); *see also Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007). To state a claim for false arrest or false imprisonment under New York law, a plaintiff must show that: (1) the defendant intentionally

---

Authority may exist. *See Everson v. N.Y. City Transit Authority*, No. 02-CV-1121, 2007 WL 539159, at *12 (E.D.N.Y. Feb. 16, 2007); *Rumala*, 2005 WL 2076596, at *11.

[6] At times in his Amended Complaint, plaintiff appears to assert other, unspecified claims based on the Fourth Amendment in addition to his false arrest and malicious prosecution claims. Plaintiff did not further specify the nature of these claims during briefing of this motion, however, and because the facts alleged in the Amended Complaint do not appear to provide a basis for any other claim based on plaintiff's Fourth Amendment rights, I limit my analysis to plaintiff's false arrest and malicious prosecution claims.

confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified. *See Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003). A plaintiff may establish intentional confinement by showing that the defendant "affirmatively procured or instigated the plaintiffs' arrest" by another. *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997).

Regardless of whether the first three prongs are satisfied, a claim for false arrest and imprisonment will fail where a defendant establishes probable cause existed, as the existence of probable cause constitutes justification and is a complete defense to an action for false arrest and imprisonment. *See Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). A court may determine whether probable cause existed as a matter of law as long as there is "no dispute as to the pertinent events and the knowledge of the arresting officers." *Weyant*, 101 F.3d at 852.

Assuming without deciding that plaintiff has met the first three prongs of his false arrest and imprisonment claims,

plaintiff's claims fail because probable cause to arrest him
existed at the time of his arrest.  Plaintiff alleges that he was
arrested based solely upon the testimony provided by defendant
Delvalle in the April 30, 2007 criminal complaint.  In that
complaint, defendant Delvalle described plaintiff's doctors'
reports of plaintiff's medical condition, as well as the contents
of activity questionnaires filled out and signed by plaintiff,
both of which were inconsistent with the activities in which
plaintiff was shown to have engaged during the same period by the
video surveillance tapes.  Indeed, plaintiff does not dispute
that he was diagnosed with a partial disability from November 20,
2005 to January 26, 2006, that he was not permitted to work on
account of this disability, that he applied for and received
worker's compensation from defendant Transit Authority during
this period, and that surveillance tapes show him, during the
same period, "going to and from the supermarket he owned," "doing
paperwork at the supermarket he owned," "carrying groceries for
personal use," and "carrying an empty quarter-keg of beer."  Am
Compl. ¶¶ 46-49.  A reasonable person in defendants' position
would, based upon these facts, conclude that plaintiff had likely
engaged in fraudulent activity regarding his 2005 worker's
compensation claim.  As Judge Kaplan recently noted in a case
involving similar circumstances, the fact that an innocent
explanation of plaintiff's behavior may exist does not vitiate

probable cause:

> The fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause. Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.

*Murray v. United Parcel Service, Inc.*, No. 08-cv-2160, 2009 WL 1150293, at *3 (S.D.N.Y. Apr. 29, 2009) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006)). Accordingly, even when the totality of the circumstances are viewed in the light most favorable to plaintiff, probable cause existed for plaintiff's arrest. Therefore, plaintiff's false arrest and imprisonment claims fail as a matter of law.

2. *Malicious Prosecution*

To prevail on a § 1983 malicious prosecution claim, a plaintiff must establish the elements of malicious prosecution under state law, and then show that his Fourth Amendment rights were violated after legal proceedings were initiated. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted). To state a claim for malicious prosecution under New York law, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*,

118 F.3d 938, 947 (2d Cir. 1997) (citation omitted).  For the
constitutional element, plaintiff must show a seizure or other
"perversion of proper legal procedures" implicating the
plaintiff's personal liberty and privacy interests under the
Fourth Amendment.  *Washington v. County of Rockland*, 373 F.3d
310, 316 (2d Cir. 2004).

It is well-settled that the existence of probable cause
supporting an arrest "precludes plaintiffs from establishing a
malicious prosecution claim unless they can point to facts
uncovered after the arrest that negated that probable cause by
making apparent the 'groundless nature of the charges.'"
*Rodriguez v. City of N.Y.*, 535 F.Supp.2d 436, 443 (S.D.N.Y. 2008)
(quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.
1996).  I have already concluded that probable cause existed at
the time of plaintiff's arrest.  Plaintiff has not pointed to any
intervening facts suggesting that the probable cause that existed
at the time of his arrest dissipated between the arrest and his
prosecution.  Further, plaintiff has not alleged that the
criminal proceedings against him were terminated in his favor, a
requisite element of a malicious prosecution claim.  Accordingly,
plaintiff's malicious prosecution claim fails as a matter of law
and is hereby dismissed.

B.  *Plaintiff's First Amendment Claims*

In the Amended Complaint, plaintiff alleges that his "false arrest and wrongful imprisonment" have "curtailed [his] ability . . . to speak freely about the facts and circumstances underlying the false criminal charges against him," which, together with "the continuing prosecution against him for crimes of which he is innocent, constitute a violation of his First Amendment right to freedom of speech."  Am. Compl. ¶¶ 80-81.  In so alleging, plaintiff appears to argue that because criminal charges are pending against him, he is unable to speak freely about the facts underlying those charges, and therefore, that defendants have violated his First Amendment rights by providing the information leading to the filing of criminal charges against him.  Plaintiff points to no legal authority in support of his argument, and none is apparent to this Court.  To the extent plaintiff chooses not to speak about the facts underlying his criminal prosecution, his silence is self-imposed and is not the result of a First Amendment violation.

Elsewhere in his Amended Complaint, plaintiff alleges that defendants "conspired together . . . to engage in conduct including making false claims, prosecuting false indictments, publishing articles about plaintiff and workers similarly situated and in disseminating the information of the indictment and articles to the general public . . . for the purpose of

depriving plaintiff of his First Amendment rights . . . including the right to file workers' compensation benefits[.]" Am. Compl. ¶ 110. Liberally construed, plaintiff's allegations attempt to state a claim against his employer for retaliation in violation of his First Amendment rights.

The First Amendment protects the right of public employees to speak out without fear of reprisal on issues of public concern. *See Frank v. Relin*, 1 F.3d 1317, 1328 (2d Cir. 1993), *cert. denied*, 510 U.S. 1012 (1993). However:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency in reaction to an employee's behavior.

*Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "[A] plaintiff making a First Amendment retaliation claim under § 1983 must initially demonstrate by a preponderance of the evidence that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). Whether or not particular speech relates to a matter of public concern is "ordinarily a question of law decided on the whole record by taking into account the content, form, and context of the given

statement." *See Melzer v. Bd. of Educ.*, 336 F.3d 185, 196 (2d

Cir. 2003). If the plaintiff is able to establish a prima facie

case of retaliation, the court must then determine whether or not

the government employer was justified in taking action against

the employee. *See Garcetti v. Cebballos*, 547 U.S. 410, 418

(2006).

Applying the above principles to the instant case,

plaintiff's allegations show that when plaintiff filed his 2005

application for worker's compensation benefits -- assuming such

action qualifies as "speech" -- he acted as an employee, not a

private citizen speaking on a matter of public concern.

Accordingly, plaintiff did not engage in protected speech and

cannot proceed on a First Amendment retaliation claim.[7]

C. *Plaintiff's Fifth Amendment Claims*

Plaintiff argues that his "false arrest and wrongful

imprisonment . . . along with the continuing prosecution against

him for crimes of which he is innocent, constitute a violation of

---

[7] Given that the Amended Complaint is far from clear as to the nature of
plaintiff's First Amendment claims, I further note that to the extent
plaintiff claims that he was arrested in retaliation for engaging in protected
speech, that claim also fails. To prevail on such a claim, which is generally
asserted against the arresting officers, "plaintiff must prove: (1) he has an
interest protected by the First Amendment; (2) defendants' actions were
motivated or substantially caused by his exercise of that right; and (3)
defendants' actions effectively chilled the exercise of his First Amendment
right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).
However, where "defendants had probable cause to arrest plaintiff, an inquiry
into the underlying motive for the arrest need not be undertaken." *Id.*
(citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995);
*Mozzochi v. Borden*, 959 F.2d 1174, 1179-80 (2d Cir. 1992)). Here, probable
cause existed at the time of plaintiff's arrest. Accordingly, to the extent
that plaintiff asserts a First Amendment claim based on his arrest, his claim
fails as a matter of law.

his Fifth Amendment right against deprivation of life, liberty and property without due process." Am. Compl. ¶ 87. The right to due process guaranteed by the Fifth Amendment, however, applies only with regard to the federal government, and thus, as a matter of law, plaintiff cannot state a claim against defendants based on his Fifth Amendment right to due process. *See, e.g.*, *Cassidy v. Scoppetta*, 365 F.Supp.2d 283, 286 (E.D.N.Y. 2005) ("The Fifth Amendment governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors.") (internal quotation marks and citation omitted). Accordingly, to the extent that plaintiff states a claim for violation of his Fifth Amendment right to due process, that claim is dismissed as a matter of law.

In his opposition brief, plaintiff attempts to recast his Fifth Amendment claim as one for violation of the Fifth Amendment's provisions against self-incrimination. As an initial matter, "[a] claim for relief may not be amended by the briefs in opposition to a motion to dismiss." *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518, 2003 WL 1751785, at *13 (S.D.N.Y. Apr. 2, 2003) (internal quotation marks and citation omitted). Therefore, plaintiff has not properly stated a claim for violation of his Fifth Amendment right against self-incrimination.

Even if plaintiff had properly stated a claim for violation of his right against self-incrimination, his claim would fail. "[A] violation of the Fifth Amendment's right against self-incrimination occurs only when a compelled statement is offered at trial against the defendant." *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 177, 199 (2d Cir. 2008). Defendant has not alleged that any self-incriminatory statement was offered against him at trial, nor even that trial of the criminal charges against him has occurred. Instead, he "submits that it would have been improper, if not unethical, and in violation of plaintiff's Fifth Amendment rights, for attorneys from defendant Transit Authority to conduct a hearing in which they would elicit information violative of his right to remain silent." Pl.'s Mem. In Opp'n at 10. However, it is undisputed that no such hearing has taken place.[8] Therefore, even under plaintiff's mistaken interpretation of the protections afforded to him by the Fifth Amendment, no testimony has been elicited from him in this case, and accordingly, no violation of his Fifth Amendment rights has occurred.

---

[8] Indeed, plaintiff's failure to appear at the hearing requested by defendant Transit Authority resulted in the dismissal of his state law tort claims against the Transit Authority as pled in his original complaint. *See Guadagni v. N.Y. City Transit Authority*, No. 08-CV-3163, 2009 WL 205050, at *6 (E.D.N.Y. Jan. 27, 2009) ("Plaintiff does not contest that his appearance at the requested statutory hearing is a prerequisite to maintaining an action in tort against the Transit Authority. . . . [and] may not assert his Fifth Amendment privilege against self-incrimination to circumvent [that] jurisdictional prerequisite[.]").

D.   *Plaintiff's Fourteenth Amendment Claims*

Plaintiff argues that his "false arrest and wrongful
imprisonment . . . along with the continuing prosecution against
him for crimes of which he is innocent, constitute a violation of
his Fourteenth Amendment right against deprivation of life,
liberty and property without due process."  Am. Compl. ¶ 88.
Plaintiff's due process claims appear to be wholly predicated on
his false arrest and imprisonment and malicious prosecution
claims.  However, as a plurality of the Supreme Court noted in
*Albright v. Oliver*:

> Where a particular Amendment provides an explicit textual
> source of constitutional protection against a particular
> sort of government behavior, that Amendment, not the more
> generalized notion of substantive due process, must be the
> guide for analyzing these claims.

510 U.S. 266, 273 (1994) (plurality opinion) (internal quotation
marks omitted).  Because the protections giving rise to
plaintiff's false arrest and imprisonment and malicious
prosecution claims are found in the Fourth Amendment, plaintiff
cannot assert a Fourteenth Amendment substantive due process
claim on the same basis.  *See id.* at 274-75 ("The Framers
considered the matter of pretrial deprivations of liberty and
drafted the Fourth Amendment to address it . . . . [Therefore,]
substantive due process . . . can afford [the plaintiff] no
relief."); *see also Rolon v. Henneman*, 517 F.3d 140, 148 n.4 (2d

Cir. 2008); *Ambrose v. City of N.Y.*, No. 02-CV-10200, 2009 WL 890106, at *16 n.9 (S.D.N.Y. Mar. 31, 2009).

Nor has plaintiff stated a viable procedural due process claim under the Fourteenth Amendment, as New York allows plaintiff to sue in tort for false arrest and malicious prosecution. *See Ambrose*, 2009 WL 890106, at *16 n.9 (noting that "[p]laintiff's allegations of false arrest and malicious prosecution state a claim only under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth Amendment") (citing *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) (interpreting *Albright* to have held that "satisfying the elements of the state-law tort of malicious prosecution . . . , knocks out any constitutional tort of malicious prosecution, because, when a state-law remedy exists, Justices Kennedy and Thomas conclude that due process of law is afforded by the opportunity to pursue a claim in state court, and four other Justices did not think that the due process clause applies in the first place")). Accordingly, plaintiff's due process claims under the Fourteenth Amendment fail as a matter of law.

Plaintiff also alleges that defendants "conspired together . . . to engage in conduct including making false claims, prosecuting false indictments, publishing articles about plaintiff and workers similarly situated and in disseminating the information of the indictment and articles to the general public

. . . for the purpose of depriving plaintiff of . . . equal
protection of the laws," and that "said conduct . . . [was[]
directed towards minority [Transit Authority] workers, including
the plaintiff and those similarly situated." Am. Compl. ¶¶ 110-
11. Construing the Amended Complaint liberally, these
allegations attempt to state an equal protection claim for
selective adverse treatment based on plaintiff's race or national
origin.

The requirement in the Fourteenth Amendment that no State
shall "deny to any person within its jurisdiction the equal
protection of the laws" means that "all persons similarly
situated should be treated alike." *City of Cleburne v. Cleburne
Living Ctr*., 473 U.S. 432, 439 (1985). In addition to showing
"selective adverse treatment of individuals compared with other
similarly situated individuals," *Bizzarro v. Miranda*, 394 F.3d
82, 86 (2d Cir. 2005), to establish an equal protection claim on
a selective treatment theory, a plaintiff must show that the
"selective treatment was based on impermissible considerations
such as race, religion, intent to inhibit or punish the exercise
of constitutional rights, or malicious or bad faith intent to
injure a person." *Id*. (quoting *LeClair v. Saunders*, 627 F.2d
606, 609-10 (2d Cir. 1980)).

In this case, plaintiff fails to allege membership in any
protected class. Nor does he allege any facts permitting an

inference that defendants bore any malice or ill will toward plaintiff prompting them to treat him adversely.  Even if an allegation that plaintiff is of "minority" status were sufficient to support the impermissible motivation component of plaintiff's equal protection claim, plaintiff makes no allegations regarding the treatment of similarly situated non-minority Transit Authority workers and how that treatment differed from the Transit Authority's treatment of workers like plaintiff. Accordingly, plaintiff has failed to allege any facts that could form the basis of an equal protection claim and, therefore, his equal protection claim must fail.

E.    *Plaintiff's § 1988 Claim*

Plaintiff also asserts a claim against defendants arising under 42 U.S.C. § 1988.  Section 1988 does not confer a substantive right; rather, it permits the recovery of attorney's fees by prevailing parties in civil rights actions.  Because all of plaintiff's substantive claims must be dismissed as a matter of law, plaintiff's claim under § 1988 is accordingly dismissed as moot.

## CONCLUSION

For the reasons set forth below, defendants' motion to dismiss the Amended Complaint is granted.  The Clerk is directed to enter judgment in favor of defendants dismissing the Amended Complaint with prejudice, and to transmit a copy of the within to

the parties and the Magistrate Judge.


SO ORDERED.

Dated:     Brooklyn, NY
           June 29, 2009


                          By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                              United States District Judge